# National Fertilizer Co. v. Hinson *et al.*

*Bill in Equity to vacate Judgment, and to enjoin Enforcement of Execution thereon.*

1. *Judgment by default; not vacated when procured by fraud if defendant's neglect concurred therein.*—A judgment by default procured by the fraud of plaintiff will not be vacated, if the negligence of the defendant concurred with the fraud in producing the result complained of.

2. *Same; when not vacated on account of false statement by plaintiff's attorney.*—The fact that, after the civil docket of a court has been continued for the term, the attorney for the plaintiff in one of the civil causes, wherein defendants had failed to file pleas or make other appearance, falsely stated to the court that it was agreed that a judgment could be taken in said cause, and thereupon the court rendered a judgment by default, affords no ground for equitable relief to vacate said judgment, though the defendant may have had a good defense; it not being shown that such judgment was not directly attributable to the defendants' negligent failure to appear and plead.

3. *Bill to vacate judgment; when fatally defective.*—A bill filed to vacate a judgment by default, which fails to show a valid excuse why the application to set aside the judgment was not made before the adjournment of court, is fatally defective.

4. *Same.*—A bill for equitable relief against a judgment at law must not only show that the complainant had a valid defense to the action, and that he was prevented from making it by accident, mistake or fraud of the opposite party, unmixed with negligence on his part, but must further show that on another trial he would be able to establish the alleged defense.

APPEAL from the Chancery Court of Geneva.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellees against the appellant, and prayed to have a judgment, rendered against the complainants in favor of respondent vacated, and for the issuance of an injunction restraining the enforcement of an execution issued upon such judgment, in the hands of the sheriff. Most of the allegations of the bill are sufficiently stated in the opinion. The alleged adequate defenses, which are referred to in the

[National Fertilizer Co. v. Hinson *et al.*]

opinion, are thus averred in the bill: "First. There was a failure of consideration in said note, in that the company did not ship them the quantity of the fertilizers they gave their note for. Second. That said fertilizers were shipped in sacks, and there was no tag or tags attached to each sack as required by law. Third. The fertilizers were not delivered as per agreement, and complainant had to buy elsewhere. Fourth. That complainant had paid quite a large sum of money, to-wit, about two hundred and fifty dollars to the attorney of said National Fertilizer Company, which he has failed to credit on said judgment. Fifth. That an execution is now in the hands of B. F. Pate, sheriff of Geneva county, Alabama, and he has levied said execution upon the property of complainants, and is proceeding to sell the same."

A temporary injunction was issued upon the complainants giving bond as required by law. The defendant filed its answer to the bill, and also demurred thereto, and moved to dismiss the bill, for want of exuity, and to dissolve the injunction.

The cause was submitted in vacation on the motion to dissolve the injunction, and the chancellor overruled the said motion. The respondent brings the present appeal, and assigns this interlocutory decree of the chancellor as error.

M. E. MILLIGAN, for appellant, cited *Collier v. Falk*, 66 Ala. 223 ; *Norman v. Burns*, 67 Ala. 251 ; *Waldrom v. Waldrom*, 76 Ala. 289 ; *Beadle v. Graham*, 66 Ala. 105 ; 10 Amer. & Eng. Encyc. of Law, 902 and note 1 ; 1 High on Injunctions, pp. 144, 146, 190, 195 ; *Roebling v. Stevens*, 93 Ala. 39; *French v. Garner*, 7 Porter, 553.

J. J. MORRIS, *contra*.

HEAD, J.—On January 16, 1892, at a special term of the circuit court of Geneva county, appellant recovered a judgment by default against appellees for the sum of $956.39, on a promissory note given for the price of fertilizers purchased. The summons and complaint were sued out in July, 1891. This bill was filed April 7th, 1893, to vacate that judgment, and for injunction against the enforcement of execution, in the hands of the sheriff,

issued thereon. The alleged equity of the bill is that complainants had meritorious defenses to the action which they were prevented from making by the fraud of the plaintiff's attorney, unmixed with negligence on their part. The first and third of these defenses, as they are specified in the bill, if true, were good, and stated with sufficient particularity; the first, however, appearing to be only a partial defense to the action. The second, which would seek to invalidate the contract, as a penalty under the law, for the failure of the plaintiff to tag the sacks of fertilizer, will not be noticed by a court of equity in a bill of this kind. The fourth would be sufficient as the basis of a decree granting a credit on the judgment for the amount paid on the note—the other essentials of the equity of the bill being established. It would not justify setting aside the judgment. The defense which must be relied on, therefore, as justifying the application for, and grant of, an injunction restraining the collection of the entire judgment, is the third, which sets up an entire failure of the consideration of the note; which defense comprehends also the partial failure of consideration set up in the first. The facts alleged as showing fraud on the part of plaintiff's attorney, and the want of fault or neglect on the part of complainants, are, that on Thursday of the term, when no judgment had been rendered in the case in question, the presiding judge announced publicly, "That the civil docket of said court would not again be taken up, and that all parties interested could go home;" and that complainants went home with the understanding that their cases would not be called for trial; and that, as they have been informed, the judgment was taken against them on Saturday morning, upon the statement to the court by the attorney for the National Fertilizer Company, "That it was by agreement that the judgment be taken," and upon this statement the court entered the judgment by default, although the civil docket had been continued for the term. The bill alleges that no such agreement had been made, but on the contrary that complainants had a good defense to the action, and that they remained in court all the week to offer said defense when the case should be called, until they went home upon the said announcement made by the judge. When the announcement of the judge was made, the time for defendants to appear and plead had

[National Fertilizer Co. v. Hinson *et al.*]

passed; and, as the court rendered judgment by default, it must be taken, in the absence of averment to the contrary, that they had done neither. They were, therefore, in default, and not entitled to notice of any proceedings which the court might thereafter take in the cause. If, after such default, the court had entered, in that particular cause, a special order of continuance, and complainants had acted upon it and gone home, yet, the court could thereafter, during the term, have set aside the continuance and granted judgment by default, without infringing any legal right whatever of the complainants. If they had been present when judgment was moved for, they could have defended, upon the special plea of failure of consideration, only by the grace of the court. Application by them for leave to defend, upon such a special plea, would have involved a prayer that their negligent violation of the rules of practice of the court, by failing to appear and plead as required by law, be condoned; which prayer would have addressed itself alone to the discretion of the court. If, therefore, plaintiff's attorney, on Saturday, had simply moved for and obtained judgment by default, there seems no possible ground upon which they could utter a word of complaint. But the position of the complainants is, as it is stated in the bill, that the judgment "was taken against them upon the statement to the court by the attorney for the National Fertilizer Company, 'That it was by agreement that the judgment be taken,' and upon this statement the court entered the judgment." The only argument, in behalf of complainants, which can proceed upon this averment is, that, inasmuch as the judgment was rendered after (or upon, which means after, as it is used in the bill) the said statement of the attorney to the court, possibly, the court was moved thereby to grant the judgment; that, possibly, it would not have granted the judgment had such statement not been made; and, possibly, if complainants had been present, and had seen fit to ask that their default be condoned, and that they be allowed to interpose and defend upon their special plea, the court would have exercised its discretion, in their favor, and allowed the defense to be made. This seems to us a frail foundation, upon which to rest the equity of a bill in chancery. We cannot know what motive was in the court's mind, in rendering judgment

in such a case, for we do know it had the lawful right to render it, upon the mere motion of the plaintiff, without giving the complainants the least cause of complaint; and if anything was said by the court, at the time, showing a purpose to give complainants further time and opportunity to plead and defend and not render judgment against them, in their absence, from which purpose it was diverted by the statement of counsel that defendants had agreed to the rendition of judgment, it does not appear in the bill. It is very certain that if complainants had done their duty and filed their plea, at the proper time, the court, unless imposed upon, would have taken no action, in the case, after the public announcement it had made; and if induced in that case, to render judgment, by false statements of plaintiff's counsel, their equity to set it aside, upon showing a meritorious defense, would have been clear. How, then, can it be said that the rendition of the judgment, in the present case, was not directly attributable to their negligent failure to appear and plead? Although there may have been fraud on the part of plaintiff, if their negligence concurred with the fraud, in producing the result complained of, equity will not grant relief. The rules of equity upon this subject are strict. We need not enlarge upon them. They may be gathered from the following authorities : *Hair v. Lowe*, 19 Ala. 224; *Beadle v. Graham*, 66 Ala. 102; *Collier v. Falk*, 66 Ala. 223; *Waldrom v. Waldrom*, 76 Ala. 285; *Roebling v. Stevens*, 93 Ala. 39. The principle is the same as obtains in our statutory proceedings for rehearing. See *Waddill v. Weaver*, 53 Ala. 58; *White v. Ryan*, 31 Ala. 400, *Shields v. Burns*, *Ib.* 535; *Stewart v. Williams*, 33 Ala. 492; *Ex parte North*, 49 Ala. 385; *Ex parte Walker*, 54 Ala. 577; *Ex parte Wallace*, 60 Ala. 267; *Brock v. S. & N. Ala. R. R. Co.*, 65 Ala. 79; *Ex parte O'Neal*, 72 Ala. 560.

Again, the bill is fatally defective in failing to show why application was not made to the court, before adjournment, to set aside the judgment.—*Roebling v. Stevens*, 93 Ala. 39, and authorities there cited. Nor do we commit ourselves to the proposition that unexplained delay of fifteen months after rendition of the judgment complained of, is not fatal to relief in equity, if the case were otherwise made out. The bill is fatally defective in another particular. We said the complainants' de-

[Reeves & Co. *et al.* v. Brown.]

fense to the action at law is sufficiently averred. That is true, but it is not averred that they will be able to prove the defense on a trial at law. The authorities hold this to be a fatal defect. Authorities *supra.*

The alleged agreement with the attorney of the plaintiff in judgment, made after the rendition of the judgment, in reference to the allowance of all proper set-offs, manifestly, adds nothing to the equity of this bill.

We are of opinion there is no equity in the bill, and the injunction ought for that reason to have been dissolved. We do not consider the denials of the answer for the reason that it does not appear to have been sworn to. Rule 35, Code, p. 817.

It may be that the bill can be so amended as to give it equity. We will reverse the decree and remand the cause, with instructions to the chancery court to dissolve the injunction, unless the bill shall be so amended, under the principles we have declared.

Reversed and remanded.

# Reeves & Co. *et al.* v. Brown.

*Bill in Equity to foreclose Mortgage.*

1. *Bill to foreclose mortgage; court in county of residence of mortgagor or where property situated has jurisdiction.*—Where a mortgagor resides in one county and the land mortgaged is situated in another county, the chancery court of either county, under the provisions of the statute (Code, § 3421), has jurisdiction of a bill filed to foreclose such mortgage, and the mortgagee may elect, at his pleasure, in which of the two counties he will file his bill. (*Ashurst v. Gibson,* 57 Ala. 586, and *Harwell v. Lehman,* 72 Ala. 345, followed; and *Bolling v. Munchus,* 65 Ala. 558, explained.)

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed on May 13th, 1892, in the chancery court of Fayette county, by J. S. Reeves & Co., Handley Bros. & Co. and Murray, Dibbrell & Co., against the appellee, John A. Brown, for the purpose of foreclosing the several mortgages, which had been exe